# FOR THE DISTRICT COURT OF COLORADO

Civil Action No. 2020 CV - 9

PATRICK MENKE, Plaintiff

v.

CRAWFORD & COMPANY, JON J EGUROLLA, individually, and in his official capacity as Vice President and Managing Director of CRAWFORD & COMPANY a Global Corporation headquartered in Georgia Defendant(s).

---

## COMPLAINT/CAUSE OF ACTION

Defendant refused to pay Plaintiff wages earned as a production bonus and failed to reimburse expenses which were mostly billed to clients, under Colorado Wage Claim Act CRS 8-4-109

Defendant failed to pay Plaintiff minimum wage, under Colorado Wage Claim Act 8-6-16 (as unreimbursed expenses exceeded salary)

Defendant failed to pay Plaintiff the Federal Per Diem period for food and incidentals, for the full 6 months the Plaintiff was deployed on assignment in Puerto Rico

Plaintiff is also claiming

Attorney's Fees under CRS 8-4-110
Statutory Penalties under CRS 8-4-109 3b

Plaintiff is also Breach of Contract, Bad Faith and Promissory Estoppel

### Plaintiff is Requesting a Jury Trial

---

## FACTUAL BASIS FOR CASE

On March 21, 2017 CRAWFORD AND COMPANY, GTS hired PATRICK MENKE to serve as an Executive General Adjuster in the Denver, Colorado market.

Shortly after being hired by CRAWFORD AND COMPANY, the PLAINTIFF learned that Crawford GTS had lost nearly half of its staff to competition in the years leading 2017, and within 3 months in apparent effort to return Crawford, GTS to its previous size,



**EXHIBIT**

**A**

Crawford GTS hired back former executives, who in turn hired back some former employees from the competition.

When the PLAINTIFF was hired Crawford's GTS division provided no systems training, no training on the billing systems billing schedules or expectations, initially offered and then refused to provide an office, and overall were disorganized.

Over the course of his initial employment with CRAWFORD & COMPANY, the PLAINTIFF was shuffled in the reporting structure to 3 managers, two of whom were being hired back by Crawford after the PLAINTIFF, who had an agenda that did not appear to include the PLAINTFF. Ultimately the PLAINTFF was managed over the duration of his tenure with CRAWFORD & COMPANY by Joh J Egurolla. Vice President and Managing Director of Crawford, GTS.

On October 10, 2017, in the aftermath of the impacts of Hurricanes Irma, Maria and Harvey on the U.S. and Puerto Rico, CRAWFORD & COMPANY deployed the PLAINTIFF to  Puerto Rico for what became a 6 month assignment to handle high value complex claims that resulted from hurricanes Irma and Maria on behalf of their global clients

During the initial weeks, the PLAINTIFF worked nearly 100 hours a week and then worked an average of 70 hours a week, posting 60 to 80 hours a week over the course of the next 6 months, leading the adjustment of a dozen claims valued at approximately $140,000,000

The size, complexity, magnitude and severity of the claims that the plaintiff was appointed to handle, combined with a 3 month power outage and intermittent internet service that impacted the San Juan area for the following three months, coupled with a stark shortage of expert resources to assist in evaluating losses, caused in part by the conditions on the ground as well as the industry's response to hurricanes Harvey and Irma stateside colliding with the absentee management and direction CRAWFORD & COMPANY made it a difficult assignment, even though the PLAINTIFF has handled claims on nearly every major disaster to impact the U.S., since the Exxon Valdez, in addition to spending a year abroad working a Typhoon in Australia and a series of earthquakes in New Zealand.

Adjusting these types of claims requires assembling, managing and leading teams of experts on each loss from a variety of fields including: industrial hygienists, structural engineers, mechanical engineers, construction consultants, salvors, accountants, and attorneys, who all report to the adjuster who then reports to the insurers.  The losses required coordination of salvage sales, negotiation with multiple contractors on most losses and frequent communication with multiple insurers, agents, brokers, claims advocates, opposing accountants, opposing architects and engineers and negotiation of differences in scope and cost of repairs on each.

In addition, the PLAINTIFF, utilized 4 independent adjusters who also deployed to

Puerto Rico for CRAWFORD, who assisted with tasks on the losses that the PLAINTIFF managed.

The claims managed by the PLAINTIFF, all exceeded $1 million in value, with the two largest claims valued at $25 million and $75 million. All of the claims required a lot of attention managing their adjustment.  All of the claims

Throughout this period, communication from the PLAINTIFF'S manager, Jon J Egurolla of CRAWFORD & COMPANY, was sparse at best and there was no technical direction or assistance offered.  Most importantly there was no administrative support and no attempt to assist the PLAINTIFF in managing the claim load, aside from offering a few folks who could attend meetings in the PLAINTIFF'S absence.

During a rare call between the PLAINTIFF and his direct manager Jon J Egurola, Mr. Egurolla admitted to the plaintiff that he didn't have the technical skills to handle a large complex property claim, and in the opinion of the PLAINTIFF had no business managing those who did.

Jon J Egurolla did not travel to Puerto Rico once during the Plaintiff's 6 month deployment, phoned infrequently and emailed less.  In the opinion of the Plaintiff he did not manage, direct or support the effort in a way that either the PLAINTIFF or Crawford's clients would have expected.

Meanwhile, shortly after the PLAINTIFF deployed to Puerto Rico, the executives ad Crawford GTS management moved quickly and hired back several former employees in the Denver Market, including an Executive General Adjuster, his two sons and a couple others from a competing firm re-establish the former Denver office, without any discussion or conferring with PLAINTIFF.

A substantial portion of the PLAINTIFF'S compensation structure was included in the production based bonus structure, included in the Crawford US Property and Casualty Global Technical Services Quarterly Incentive Compensation Program, which promised to pay the PLAINTIFF up to 50% of the hourly billing in quarters where billing was at the level produced by the PLAINTIFF.

The PLAINTIFF'S total billings for the first quarter of 2018, combined with eligible catch up billing from the 4th quarter of 2017, earned the PLAINTIFF approximately $150,000 in bonus for the first quarter of 2018.

The PLAINTIFF has not been provided with any records of his billing during the period during his employment a Crawford, despite making multiple requests to Jon J Egurolla for this information.

The PLAINTIFF had his first annual review the final week of February 2018, which ranked him as a 3.0, and eligible for the bonus he earned in Puerto Rico.

On March 30, 2018 mere hours before the end of the first-quarter of 2018, Jon J Egurola phoned the PLAINTIFF, while he was on an all day field inspection and demanded that he stop and respond to an urgent request to acknowledge that John J Egurolla was placing the PLAINTIFF on a Personal Improvement Plan (PIP), which CRAWFORD & COMPANY, later used to deny paying the PLAINTIFF the substantial bonus he earned, working over 1,800 hours in, very difficult surroundings and circumstances in the 6 months leading to the last hour of the first quarter of 2018.

This a position that is untenable and subjects Crawford to additional liability, Jon J Egurolla clearly benefited from the PLAINTIFF'S labor and placing him on a PIP in the last hours of the second quarter of a very productive assignment, was a blatant scheme by Jon J Egurola to deprive the PLAINTIFF of the fruits of his work and keep them for himself or those to whom he reported.

The Plaintiff's colleagues, who worked at Crawford GTS were not held to the same standards that the Plaintiff was judged by in the PIP, which was based in part upon contrivances concocted by Jon J Egurolla.

This effort was a blatant attempt, by Jon Egurola to retain nearly $150,000 that the Plaintiff earned, working which is a breach of implied covenant of good faith and fair dealing under the quarterly incentive compensation program as well as a breach of a direct verbal contract which was made during a discussion Jon J Egurolla at the time of the PLAINTIFF'S annual review.

---

## DEMAND FOR RELIEF

PLAINTIFF IS DEMANDING $150,000 in compensatory damages, Punitive Damages, Attorney's Fees under CRS 8-4-110 and Statutory Penalties under CRS 8-4-109

**Plaintiff is Requesting a Jury Trial**

### III.  Signature Block.

**"s/ signature."** Patrick Menke
May 4, 2020
Representing myself in the matter Pro Se

Patrick Menke
401 Interlocken Blvd
Broomfield, CO 80021
224-209-0597
Patrickamenke@gmail.com

## FOR THE DISTRICT COURT OF COLORADO

Civil Action No. 2020 CV - 9

PATRICK MENKE, Plaintiff

v.

CRAWFORD & COMPANY, JON J EGUROLLA, individually, and in his official capacity
as Vice President and Managing Director of CRAWFORD & COMPANY a Global
Corporation headquartered in Georgia Defendant(s).

---

### COMPLAINT/CAUSE OF ACTION

Defendant refused to pay Plaintiff wages earned as a production bonus and failed to
reimburse expenses which were mostly billed to clients, under Colorado Wage Claim
Act CRS 8-4-109

Defendant failed to pay Plaintiff minimum wage, under Colorado Wage Claim Act 8-6-16
(as unreimbursed expenses exceeded salary)

Defendant failed to pay Plaintiff the Federal Per Diem period for food and incidentals,
for the full 6 months the Plaintiff was deployed on assignment in Puerto Rico

Plaintiff is also claiming

Attorney's Fees under CRS 8-4-110
Statutory Penalties under CRS 8-4-109 3b

Plaintiff is also Breach of Contract, Bad Faith and Promissory Estoppel

### Plaintiff is Requesting a Jury Trial

---

### FACTUAL BASIS FOR CASE

On March 21, 2017 CRAWFORD AND COMPANY, GTS hired PATRICK MENKE to
serve as an Executive General Adjuster in the Denver, Colorado market.

Shortly after being hired by CRAWFORD AND COMPANY, the PLAINTIFF learned that
Crawford GTS had lost nearly half of its staff to competition in the years leading 2017,
and within 3 months in apparent effort to return Crawford, GTS to its previous size,

Crawford GTS hired back former executives, who in turn hired back some former employees from the competition.

When the PLAINTIFF was hired Crawford's GTS division provided no systems training, no training on the billing systems billing schedules or expectations, initially offered and then refused to provide an office, and overall were disorganized.

Over the course of his initial employment with CRAWFORD & COMPANY, the PLAINTIFF was shuffled in the reporting structure to 3 managers, two of whom were being hired back by Crawford after the PLAINTIFF, who had an agenda that did not appear to include the PLAINTFF. Ultimately the PLAINTFF was managed over the duration of his tenure with CRAWFORD & COMPANY by Joh J Egurolla. Vice President and Managing Director of Crawford, GTS.

On October 10, 2017, in the aftermath of the impacts of Hurricanes Irma, Maria and Harvey on the U.S. and Puerto Rico, CRAWFORD & COMPANY deployed the PLAINTIFF to  Puerto Rico for what became a 6 month assignment to handle high value complex claims that resulted from hurricanes Irma and Maria on behalf of their global clients

During the initial weeks, the PLAINTIFF worked nearly 100 hours a week and then worked an average of 70 hours a week; posting 60 to 80 hours a week over the course of the next 6 months, leading the adjustment of a dozen claims valued at approximately $140,000,000

The size, complexity, magnitude and severity of the claims that the plaintiff was appointed to handle, combined with a 3 month power outage and intermittent internet service that impacted the San Juan area for the following three months, coupled with a stark shortage of expert resources to assist in evaluating losses, caused in part by the conditions on the ground as well as the industry's response to hurricanes Harvey and Irma stateside colliding with the absentee management and direction CRAWFORD & COMPANY made it a difficult assignment, even though the PLAINTIFF has handled claims on nearly every major disaster to impact the U.S., since the Exxon Valdez, in addition to spending a year abroad working a Typhoon in Australia and a series of earthquakes in New Zealand.

Adjusting these types of claims requires assembling, managing and leading teams of experts on each loss from a variety of fields including: industrial hygienists, structural engineers, mechanical engineers, construction consultants, salvors, accountants, and attorneys, who all report to the adjuster who then reports to the insurers.  The losses required coordination of salvage sales, negotiation with multiple contractors on most losses and frequent communication with multiple insurers, agents, brokers, claims advocates, opposing accountants, opposing architects and engineers and negotiation of differences in scope and cost of repairs on each.

In addition, the PLAINTIFF, utilized 4 independent adjusters who also deployed to

2

Puerto Rico for CRAWFORD, who assisted with tasks on the losses that the PLAINTIFF managed.

The claims managed by the PLAINTIFF, all exceeded $1 million in value, with the two largest claims valued at $25 million and $75 million. All of the claims required a lot of attention managing their adjustment.  All of the claims

Throughout this period, communication from the PLAINTIFF'S manager, Jon J Egurolla of CRAWFORD & COMPANY, was sparse at best and there was no technical direction or assistance offered.  Most importantly there was no administrative support and no attempt to assist the PLAINTIFF in managing the claim load, aside from offering a few folks who could attend meetings in the PLAINTIFF'S absence.

During a rare call between the PLAINTIFF and his direct manager Jon J Egurola, Mr. Egurolla admitted to the plaintiff that he didn't have the technical skills to handle a large complex property claim, and in the opinion of the PLAINTIFF had no business managing those who did.

Jon J Egurolla did not travel to Puerto Rico once during the Plaintiff's 6 month deployment, phoned infrequently and emailed less.  In the opinion of the Plaintiff he did not manage, direct or support the effort in a way that either the PLAINTIFF or Crawford's clients would have expected.

Meanwhile, shortly after the PLAINTIFF deployed to Puerto Rico, the executives ad Crawford GTS management moved quickly and hired back several former employees in the Denver Market, including an Executive General Adjuster, his two sons and a couple others from a competing firm re-establish the former Denver office, without any discussion or conferring with PLAINTIFF.

A substantial portion of the PLAINTIFF'S compensation structure was included in the production based bonus structure, included in the Crawford US Property and Casualty Global Technical Services Quarterly Incentive Compensation Program, which promised to pay the PLAINTIFF up to 50% of the hourly billing in quarters where billing was at the level produced by the PLAINTIFF.

The PLAINTIFF'S total billings for the first quarter of 2018, combined with eligible catch up billing from the 4th quarter of 2017, earned the PLAINTIFF approximately $150,000 in bonus for the first quarter of 2018.

The PLAINTIFF has not been provided with any records of his billing during the period during his employment a Crawford, despite making multiple requests to Jon J Egurolla for this information.

The PLAINTIFF had his first annual review the final week of February 2018, which ranked him as a 3.0, and eligible for the bonus he earned in Puerto Rico.

3

On March 30, 2018 mere hours before the end of the first-quarter of 2018, Jon J Egurola phoned the PLAINTIFF, while he was on an all day field inspection and demanded that he stop and respond to an urgent request to acknowledge that John J Egurolla was placing the PLAINTIFF on a Personal Improvement Plan (PIP), which CRAWFORD & COMPANY, later used to deny paying the PLAINTIFF the substantial bonus he earned, working over 1,800 hours in, very difficult surroundings and circumstances in the 6 months leading to the last hour of the first quarter of 2018.

This a position that is untenable and subjects Crawford to additional liability, Jon J Egurolla clearly benefited from the PLAINTIFF'S labor and placing him on a PIP in the last hours of the second quarter of a very productive assignment, was a blatant scheme by Jon J Egurolla to deprive the PLAINTIFF of the fruits of his work and keep them for himself or those to whom he reported.

The Plaintiff's colleagues, who worked at Crawford GTS were not held to the same standards that the Plaintiff was judged by in the PIP, which was based in part upon contrivances concocted by Jon J Egurolla.

This effort was a blatant attempt, by Jon Egurola to retain nearly $150,000 that the Plaintiff earned, working which is a breach of implied covenant of good faith and fair dealing under the quarterly incentive compensation program as well as a breach of a direct verbal contract which was made during a discussion Jon J Egurolla at the time of the PLAINTIFF'S annual review.

## DEMAND FOR RELIEF

PLAINTIFF IS DEMANDING $150,000 in compensatory damages, Punitive Damages, Attorney's Fees under CRS 8-4-110 and Statutory Penalties under CRS 8-4-109

**Plaintiff is Requesting a Jury Trial**

### III.  Signature Block.

**"s/ signature."** Patrick Menke
May 4, 2020
Representing myself in the matter Pro Se

Patrick Menke
401 Interlocken Blvd
Broomfield, CO 80021
224-209-0597
Patrickamenke@gmail.com