IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02777-RBJ

PATRICK MENKE,

    Plaintiff,

v.

CRAWFORD & COMPANY, a Global Corporation headquartered in Georgia and
JON J. EGUROLLA, individually and in his official capacity as Vice President and Managing Director,

    Defendants.

---

ORDER ON THE MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendants' motion for summary judgment (ECF No. 33). The motion to for summary judgment is GRANTED in part and DENIED in part.

## I.    BACKGROUND

On March 21, 2017 plaintiff Patrick Menke was hired by defendant Crawford & Company (Crawford) as an executive general adjuster (EGA) in its Denver office. ECF No. 1. Plaintiff's offer letter contained information on his salary and automobile allowance, but it did not reference the Quarterly Incentive Compensation Program (ICP), under which employees could earn quarterly bonuses based on their performance. ECF No. 33. Plaintiff's direct supervisor was defendant Jon Egurolla, Crawford's vice president and managing director for the western region. *Id.* In October 2017, following Hurricane Maria, plaintiff volunteered for

deployment in Puerto Rico.  *Id.*  He was to remain in Puerto Rico on an "as needed" basis.  ECF No. 33-2 at 98.  In Puerto Rico he oversaw adjustments in complex insurance claims valued over $500,000.  *Id.* at 27.  He was Crawford's primary point of contact with customers and was in frequent communication with customers.  *Id.* at 38.  He exercised independent judgment and discretion to further Crawford's interests.  *Id.* at 47.

Crawford billed customers based on hours reported by adjusters on each claim.  *Id.* at 39.  Plaintiff, like all Crawford adjusters, was responsible for entering his own billable hours, and it was essential to the job.  *Id.* at 44.  Shortly after he arrived in Puerto Rico, he fell behind on reporting his hours—at times he was months behind on billing.  *Id.* at 112.  He also failed to timely correspond with clients, and clients complained.  *See e.g.*, *id.* at 35.  Mr. Egurolla counseled plaintiff about these issues first in August 2017 and then again in writing on October 25, shortly after his arrival in Puerto Rico.  *Id.* at Ex. 16.  Plaintiff does not contest that he was behind on his billing.  *See id.*  Mr. Egurolla gave plaintiff a written performance evaluation on February 21, 2018 that documented similar issues.  *Id.* at Ex. 18.  Plaintiff says that at his performance review, Mr. Egurolla told him that he would raise plaintiff's ranking to a 3.0, which made him eligible to receive a bonus under the ICP.  *Id.* at 100.  Plaintiff also contends that Mr. Egurolla told him that he would be getting his bonus.  *Id.*  Mr. Egurolla contends that he never made such a promise.  ECF No. 33-1 at ¶9.

In early March Mr. Egurolla sent plaintiff an email about problems with his billing on his open claims.  ECF No. 33-2 at Ex. 20.  Mr. Egurolla demanded that he bring his billings up to date by March 26, 2018.  *Id.*  Plaintiff did not object to this demand at the time.  *Id.* at 152.

Plaintiff did not update his files by the twenty-sixth. *Id.* at Ex. 22. As a result of this, and the complaints from clients, Mr. Egurolla issued plaintiff a Personal Improvement Plan (PIP) on March 30. *Id.* at Ex. 24. This made plaintiff ineligible for a bonus under the terms of the ICP program. *Id.* at Ex. 11. Plaintiff contends that the reason he was placed on the PIP was solely so that the company and Mr. Egurolla could deprive him of his bonus.

During plaintiff's tenure at Crawford he also had issues with reimbursement of expenses incurred while in Puerto Rico. Initially, he received a per diem in Puerto Rico, as authorized by Mr. Egurolla. ECF No. 33-1 at ¶11. However, in January of 2018, Mr. Egurolla rescinded his authorization for Mr. Menke to receive a per diem because he was uncomfortable billing clients for the per diem when plaintiff had not submitted the hours billed on cases. *Id.* After that, if plaintiff wanted his expenses reimbursed, he needed to submit expense requests in compliance with Crawford's travel policies and guidelines. *See* ECF No. 33-2 at Ex. 12. These policies require that employees seeking reimbursement provide documentation, like receipts, of all expenses more than twenty-five dollars, and that all reimbursement requests be submitted within ninety days of when the expense was incurred. *Id.* Plaintiff testified that he did not know about the reimbursement system. ECF No. 33-2 at 212. Plaintiff was told by a peer on March 26, 2018 that expenses needed to be entered with documentation into the Crawford system in order to be reimbursed. Plaintiff did not submit any requests for reimbursement with supporting documentation while employed at Crawford. *See* ECF No. 33-3 at ¶14.

On May 4, 2018, Crawford fired Mr. Menke due to his performance problems. *Id.* at ¶15. He was told that he needed to submit documentation of his expenses to be reimbursed. *Id.* at

¶14.  On May 15, plaintiff emailed Crawford to ask for reimbursement for expenses, although that email did not specify what expenses or provide any documentation of those expenses.  *See* ECF No. 33-2 at Ex. 47.  Several months later, plaintiff again asked for $15,000 in expense reimbursement without providing documentation.  *Id.* at Ex. 48.  Crawford asked for documentation and reminded plaintiff of the usual ninety-day limit for reimbursement requests, but said that he could have ten additional days to provide the documentation for his request.  *Id.*

Plaintiff responded on the last day of the ten-day period with a summary of his expenses in the form of a spreadsheet, seeking roughly $52,000 in reimbursement.  *Id.* at Ex. 49.  Plaintiff claims that the spreadsheet had the documentation "embedded," but Crawford was unable to find any such data.  *Id.*  Crawford informed Mr. Menke that it still did not have the documentation.  *Id.*  Plaintiff did not respond until April 3, 2019, nearly six months later, when he again requested $15,000, and again failed to provide documentation for those expenses.  *Id.*  Crawford rejected the claim as untimely and invalid.  *Id.*

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue is material if it is essential to the proper disposition of the claim.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the burden of showing a lack of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 325 (1986). Allegations that are unsupported by probative evidence or conclusory allegations that factual issues exist are insufficient to prevent the grant of a motion for summary judgment. *Anderson*, 477 U.S. at 247–48. In applying this standard, this Court must view the record and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Adler*, 144 F.3d at 670.

### III.   SUMMARY JUDGMENT

**A. Plaintiff's Entitlement to Minimum Wage under the Colorado Wage Claim Act**

Plaintiff has not presented sufficient evidence to forestall a finding of summary judgment on his entitlement to minimum wage. Plaintiff contends that defendants violated the Colorado Wage Claim Act[1] by failing to provide him a salary that exceeded the minimum wage required by that act. He alleges that the expenses he incurred in his employment while in Puerto Rico exceeded his salary, meaning that he lost money by working for Crawford in Puerto Rico. Defendants counter that Mr. Menke's employment fell within an exemption to the minimum wage requirement for "administrative employees." An administrative employee, as outlined in Colorado Minimum Wage Order 34, issued pursuant to the Colorado Wage Claim Act, is defined as "a salaried individual who directly serves the executive, and regularly performs duties important to the decision-making process of the executive." 7 CCR 1103-1, 5(a). An administrative employee "regularly exercises independent judgment and discretion in matters of

---

[1] Neither party engaged in a choice-of-law analysis, nor have they provided any document that addresses choice-of-law. However, as both parties have briefed the case as if the Colorado Wage Claim Act and Colorado common law applies, I will review the motion for summary judgment on that basis.

significance and their primary duty is non-manual in nature and directly related to management policies or general business operations." *Id.*

The administrative exemption in the Minimum Wage Order issued pursuant to the Colorado Wage Claim Act is modeled on the same exemption under the Fair Labor Standards Act (FLSA). *Allsopp v. Akiyama, Inc.*, 2010 WL 1258006, at *4 (D. Colo. 2010). The administrative exemption under the FLSA examines "whether the employee performs work directly related to assisting with the running or servicing of the business, as distinguished from manufacturing or selling a product." *Ott v. Chacha in Art LLC*, 506 F. Supp. 3d 1133, 1139 (D. Colo., 2020)

Plaintiff claims that his position does not fit within the definition of administrative employee because he "was simply an adjuster who handled claims, did not manage any professional staff or even have an office or support person." ECF No. 34. However, plaintiff testified at his deposition that he answered directly to Mr. Egurrola, a Crawford executive, and that he was salaried. ECF No. 33-2 at 37, 57. He testified that he exercised independent judgment and discretion to further Crawford's business interests by aiding its clients. *Id.* at 47–8. He handled matters of significance: plaintiff managed over one hundred million dollars in claims for Crawford while he was deployed to Puerto Rico. *Id.* at 112. The fact that plaintiff did not have an assigned office, manage other employees, or have a support staff does not affect the analysis of whether he was an administrative employee. Plaintiff has provided only conclusory allegations that he was not an administrative employee. He has not come forward with evidence

from which a reasonable factfinder could find for plaintiff. Summary judgment is appropriate on this issue.

### B. Plaintiff's Entitlement to Reimbursement for Expenses

Plaintiff has failed to raise a genuine dispute of material fact on this issue. A dispute between parties is genuine if there is enough evidence on each side so that a rational trier of fact could find for either party. *Adler*, 144 F.3d at 670.

Defendants have presented evidence that its travel policy delineates the requirements an employee must meet to be reimbursed for expenses incurred on the job. *See* ECF No. 33-2, Ex. 12 at 20. That policy requires employees to provide documentation of all expenses to be reimbursed that exceeds twenty-five dollars and that the expenses be documented and reported to the company within ninety days of the date on which the expense was incurred. *Id.* The policy specifies that the employee has the responsibility of reviewing the travel policy prior to making travel arrangements. *Id.* at 4. Crawford reserves the right to reject requests for reimbursement on any expenses that do not comply with the policy. *Id.*

Mr. Egurrola initially authorized Mr. Menke to receive a per diem while he was in Puerto Rico, as contemplated under the travel policy. ECF No. 33-1 at 11. However, after plaintiff consistently failed to enter his billable hours while in Puerto Rico, Mr. Egurrola felt "uncomfortable" billing clients for the per diem while plaintiff was failing to provide evidence that he was billing hours for their cases at all. *Id.* After Mr. Egurrola withdrew authorization for Mr. Menke to receive a per diem, to be reimbursed Mr. Menke had to enter his expenses into a separate system. ECF No. 33-2 at 111. Plaintiff argues that he did not know he had to enter the

expenses, and that Mr. Egurrola never told him to. *Id.*  However, as of at least March 26, 2018, according to defendants' evidence, plaintiff understood that expenses over fifty dollars had to be reimbursed. *See id.* at 212.  When he was fired on May 4, 2018, he was told that he needed to submit documentation of his expenses to be reimbursed. *Id.* at Ex. 48.  Plaintiff does not contest any of these facts.

On September 27, Ms. Ekong, the human resources partner, sent Mr. Menke an email which gave him ten additional days to submit a reimbursement request with the required documentation to her. *Id.* at Ex. 49.  On October 8, plaintiff provided a summary of his expenses in the form of spreadsheet. *Id.*  Ms. Ekong emailed back, requesting receipts and proofs of payment on the reimbursements. *Id.*

Plaintiff contends that the spreadsheet he provided in response to Ms. Ekong's October deadline contained the requested receipts and proofs of payment embedded in the document. ECF No. 33-2 at 115–17.  However, when Ms. Ekong responded to his October 8 submission asking where the documentation of expenses was, he did not respond until April 3, 2019. *Id.* at Ex. 49.  Plaintiff states that he has since sent this spreadsheet containing the documentation to defendants in discovery for this suit, although he was told that defendants could not access the file as it was "corrupt" and could not be opened. *Id.* at 115.  At his deposition, he asserted many times that he would provide the spreadsheet to defendants again and that he would provide hard copies of the documentation as well. *See id.* at 117–18.

Defendants have attached the spreadsheets provided by Mr. Menke during discovery as exhibits to the instant motion. *See* ECF No. 33-4 at Exs. 3, 4.  One spreadsheet (Exhibit 3),

8

according to Ms. McCabe, an attorney on this case for defendants, contained no embedded data, and the other (Exhibit 4) could not be opened, despite attempts to do so by an information technology specialist. *Id.* at ¶5–7.

Plaintiff's response to defendants' evidence on the point of reimbursement is to reassert that his submitted spreadsheet contained embedded documentation, and that Crawford has "ignored the submission or claimed that it was submitted in some way that does not conform with" its policies. ECF No. 34. He also responds that all per diem and hotel expenses were billed to Crawford's clients—he contends that this means that Crawford has always known the extent of the expenses. *Id.*

Plaintiff's response fails to raise a genuine dispute. Had plaintiff provided the spreadsheet that he sent to Ms. Ekong as an exhibit in a non-corrupt form, with the embedded data, there would be a genuine dispute. Further, if plaintiff had provided an exhibit showing how much Crawford clients had been billed related to expenses incurred by Mr. Menke during his time in Puerto Rico there would be a genuine dispute. He did not provide any such evidence. On the record before the Court, there is no genuine dispute—plaintiff has not provided enough evidence for a reasonable factfinder to find in his favor on this issue.

### C. Plaintiff's Claim for Breach of Contract, Bad Faith, and Promissory Estoppel

Plaintiff contends that even if he was not eligible for the ICP program because of the PIP, he is entitled to the bonus anyway because of statements made to him by Mr. Egurolla indicating that he would receive a bonus for the first quarter of 2018. He claims that Mr. Egurolla's statements bound Crawford contractually because Mr. Egurolla had apparent authority to do so.

Whether a contract exists, when "the evidence is conflicting or admits of more than one inference," is a question for the jury. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986). Likewise, whether an agent had apparent authority to act for a principal is a question of fact. *See Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 476 (Colo. 1995). Apparent authority can be shown by "written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him." *Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo. App. 1990). The doctrine of apparent authority exists to protect third parties who relied upon their good faith belief that an agency relationship existed between the apparent principal and agent. *Sigel-Campion Live Stock Comm'n Co. v. Ardohain*, 207 P. 82, 83 (Colo. 1922). "An agent can make the principal responsible for his or her actions if the agent is acting pursuant to apparent authority, regardless of whether the principal has knowledge of the agent's conduct." *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 407 (Colo. App. 2004).

To succeed under a theory of apparent authority, the claimant must also show that she changed her position in reliance on the apparent authority. *Franks v. City of Aurora*, 362 P.2d 561, 564 (Colo. 1961). "Such reliance typically is formed through voluntary interactions in which the third party can assess the agent's authority and choose how to deal with the agent." *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 641 (Colo. App. 2007).

The conversation that gave rise to this cause of action, between plaintiff and Mr. Egurolla, occurred on February 21, 2018. ECF No. 33-2 at 99. In that conversation, they

discussed Mr. Egurolla's subjective analysis of plaintiff's performance, and Mr. Egurolla indicated that plaintiff had not scored high enough to be eligible for a bonus under the ICP program. *Id.* at 99–100. Plaintiff responded that if he was not going to receive his bonus, he would not remain in Puerto Rico. *Id.* at 100. As a result, Mr. Egurolla said he would change plaintiff's rating so that he would be eligible for the bonus, and, according to plaintiff, said that "I [plaintiff] would be getting my bonus." *Id.*

In his declaration, Mr. Egurolla stated that he did not have the power to bind Crawford in a contract on the ICP bonus program, and that he "never offered to exempt Mr. Menke from ICP rules if he would continue to work in Puerto Rico." ECF No. 33-1 at ¶9. Defendants also rely on language in the ICP program and the employee handbook to assert that Mr. Egurolla, even if he made the statements that plaintiff alleges, could not bind the company. The ICP says, "the CEO will have total discretion with respect to incentive amounts paid and reserves the right to amend or terminate this incentive program at any time." ECF No. 33-2, Ex. 11. The employee handbook says that "no manager or other representative of Crawford & Company has the authority to make any verbal promises, commitments, or statements of any kind that are not in compliance or conjunction with Crawford's written employment policies and/or procedures." ECF No. 33-3 at Ex. 3.

Reading the facts in the light most favorable to the plaintiff, there is a genuine dispute of material fact on whether Mr. Egurolla entered a valid verbal contract that could bind Crawford. The handbook says that no manager or other representative has the right to bind Crawford to any commitment or promise that is "not in compliance or conjunction with Crawford's written

employment policies and/or procedures." But if plaintiff's theory of the case is correct, Mr. Egurolla's actions *were* in compliance with these procedures. The procedure regarding the ICP is that the CEO has "total discretion" over the amounts paid via the ICP and the right to amend or end the ICP at any time. A CEO can have an agent who acts on his behalf. Plaintiff argues that Mr. Egurolla was an agent for the CEO and had apparent authority to act on behalf of the CEO regarding the ICP bonuses.

Defendants argue that Mr. Egurolla could not make a contractual guarantee conditioned on future approval, but according to plaintiff's testimony, Mr. Egurolla did not condition the bonus on future approval in the phone conversation. Reading everything in the light most favorable to plaintiff, Mr. Egurolla was acting as an apparent agent of the CEO, who had total discretion over the ICP. Defendants also argue that the alleged oral contract lacked consideration. Plaintiff claims the consideration was his agreement to stay in Puerto Rico if promised a bonus, but defendants respond that plaintiff did not suffer a detriment because he was already required to stay in Puerto Rico until he was no longer needed. But neither party has presented evidence on whether plaintiff could leave his assignment in Puerto Rico whenever he wanted. Mr. Menke said he told Mr. Egurolla that if he was not going to receive his bonus he would leave "on the next plane." ECF No. 33-2 at 91. Plaintiff also testified that he "volunteered" for the Puerto Rico assignment. *Id.* at 98. Without more evidence, the Court cannot say whether Mr. Menke had a preexisting duty to remain in Puerto Rico.

These are issues of material fact. Plaintiff asserts that Mr. Egurolla told him that he would "be getting his bonus" if he stayed in Puerto Rico. Mr. Egurolla says that he never said

that. Whether that statement was actually said, whether it is enough to constitute a valid oral contract, and whether Mr. Egurolla had apparent authority to act on behalf of the CEO, are questions for the jury.

Nor can I say the evidence is so one-sided that there is no genuine dispute on these issues. On the question of whether Mr. Egurolla made the statements and precisely what those statements were, it is plaintiff's word against Mr. Egurolla's. On the issue of apparent authority, neither side has presented relevant evidence, considering plaintiff's theory that Mr. Egurolla's actions complied with written Crawford procedure. This issue will also turn on the existence and contents of Mr. Egurolla's alleged statements. On the issue of whether Mr. Menke had a preexisting duty to remain in Puerto Rico, there is very little evidence on either side. There is sufficient evidence on both sides that a reasonable fact finder could find for either party on this issue.

### D. Plaintiff's Entitlement to a Bonus under the Colorado Wage Claim Act

Under the Colorado Wage Claim Act, plaintiff can only recover wages that are "earned, vested, determinable, and unpaid at the time of . . . discharge." C.R.S. § 8-4-109(a)(1). Under the Act, plaintiff is entitled to bonuses "in accordance with the terms of any agreement between an employer and employee." *Id.* at § 8-4-101(14)(a)(1). If Mr. Egurolla and plaintiff entered a valid agreement that bound Crawford, plaintiff would be entitled to recover. Defendants argue that plaintiff failed to oppose their argument that the ICP is a discretionary program that cannot vest wages under the Colorado Wage Claim Act.[2] ECF No. 35 at 2. However, if Mr. Egurolla

---

[2] Defendants cites *Kouzmanoff v. Unum Life Ins. Co. of Am.* for the proposition that benefits are not compensable where "[the employer] retained the unilateral right to cancel the policy at any time, for any

entered a binding contract regarding the bonus with plaintiff, the CEO would no longer have the unilateral ability to prevent plaintiff from receiving his bonus. For the reasons outlined above, there is a genuine dispute of material fact and this claim can proceed.

### E. Reopening Discovery is Not Warranted

Plaintiff, having sought no discovery previously, now seeks to reopen discovery to obtain documents in defendants' control.

In determining whether discovery should be reopened, courts consider the following factors: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

I will proceed through these factors in order. While the jury trial was set to commence November 8, 2021, the parties filed a joint motion to stay the proceedings pending the resolution of the instant motion. *See* ECF No.36. I granted that motion and vacated the trial date. ECF No. 37. Trial is no longer imminent, although I imagine the parties will want to set a new trial date as soon as possible once this order is entered. However, because trial is not imminent, this factor weighs in favor of reopening discovery.

---

reason at all." 374 F. Supp. 3d 1076, 1089 (D. Colo. 2019). Under the ICP, the CEO had the ability to cancel the policy at any time, but also presumably had the ability to enter contracts under that broad power. Once a contract regarding an ICP bonus exists, the CEO no longer has unilateral power to cancel that contract.

The request to reopen discovery is strenuously opposed by defendants. *See* ECF No. 35. Defendants claim they will be prejudiced if discovery is reopened—they contend that it would require them to incur additional expenses of complying with new discovery requests and potentially expenses of preparing further briefings on the motion for summary judgment. I am unsure why further briefing on the motion for summary judgment would be required by reopening discovery—that motion is being disposed of in this order. These factors, on balance, weigh against reopening discovery.

The record shows that plaintiff was not diligent in obtaining discovery within the discovery period. According to Ms. McCabe, plaintiff did not serve a single interrogatory, request for production, request for deposition, or any other discovery request within the discovery period. ECF No. 35-1 at ¶3. Plaintiff says, in his response to defendants' motion for summary judgment, that defendants have failed to provide any of the ESI, documents, and tangible things that he requested. ECF No. 34. However, he fails to provide any evidence that he requested these items. Initial disclosures were made on November 25, 2020. ECF No. 19. Discovery closed on April 9, 2021. *Id.* This period should have been sufficient to conduct the discovery for this type of case, and plaintiff has not alleged that it was insufficient. *See* ECF No. 34. Plaintiff has failed to allege what, if any, relevant evidence is likely to come to light it discovery is reopened. *See id.* Though plaintiff is representing himself pro se, and I recognize the difficulty that pro se litigants face in navigating the legal system, in this instance, and considering these factors, I find that reopening the discovery is not warranted.

## ORDER

1. Defendants' motion for summary judgment, ECF No. 33, is GRANTED as to plaintiff's claims on minimum wage and reimbursement. It is DENIED as to plaintiff's claim for breach of contract and for a bonus under the Colorado Wage Claim Act.

2. To the extent plaintiff moved for the reopening of discovery in his response to defendants' motion for summary judgment, ECF No. 34, it is DENIED.

DATED this 14th day of October, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge